UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SEAN C. WITMER,<br><br>                Plaintiff,<br><br>v.<br><br>GREATER LAKES MENTAL HEALTHCARE,<br><br>                Defendant. | CASE NO. C15-5039 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Greater Lakes Mental Healthcare's ("GLMH") motion for summary judgment (Dkt. 29). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On January 21, 2015, Plaintiff Sean Witmer ("Witmer") filed a complaint against GLMH asserting causes of action for violations of his right to bear arms and his right to be free from unreasonable searches and seizures under the federal and state constitutions. Dkt. 3.

On January 8, 2016, GLMH filed a motion for summary judgment. Dkt. 29. On February 11, 2016, Witmer responded. Dkt. 35. On Febraury 12, 2016, GLMH replied and moved to strike Witmer's untimely response.[1] Dkt. 36.

---

[1] The Court denies the motion to strike because GLMH is not prejudiced by the Court's consideration of the untimely brief.

ORDER - 1

## II. FACTUAL BACKGROUND

The facts are uncontested, and Witmer failed to submit any evidence in support of his opposition.

GLMH is a private, a non-profit company that provides an array of mental health services. Dkt. 31, Declaration of Glenn Czerwinksi ("Czerwinksi Dec.") ¶ 2. Witmer is a former participant in GLMH's Shelter Plus Care Program ("Program"), which is a program for mentally ill and homeless individuals in Pierce County, Washington. *Id*., ¶ 3. The Program provides housing and mental healthcare for its participants.

Witmer started receiving services from GLMH in 2002, which included mental health services, including counseling and medication management; welfare checks; and housing support. *Id*., ¶ 2–3. Witmer lived in an apartment owned by the Metropolitan Development Council ("MDC"), a non-profit agency that, among other things, provides housing to chronically homeless individuals. *Id*., ¶ 3. All of the residents at the MDC-owned building were participants in GLMH's program. *Id*.

MDC and GLMH had an agreement whereby MDC provided housing for program participants at an adjusted market rate. GLMH paid a portion of the rent and the tenant/participant paid the remainder. At the time Witmer left the program, he paid $209 per month for rent and GLMH paid the remainder of the $608 owed to MDC. *Id*., ¶ 4. The United States Department of Housing and Urban Development ("HUD") provided Pierce County with a grant that in turn provided money to GLMH to subsidize Witmer's rent. *Id*. In order to receive those funds, GLMH was required to comply with certain federal regulations. *Id*. The federal government, however, was not involved in the day-

to-day operation or management of GLMH's program or of the MDC-owned building. *Id*.

Because GLMH did not own the building where Witmer lived, he entered into a lease directly with MDC.  Similarly, GLMH was not the building's landlord and did not directly operate or maintain the building itself.  Rather, GLMH administered its program to the participants who lived at the building.  *Id*., ¶ 5.  GLMH also entered into an agreement with Witmer wherein he agreed (1) that "[p]ossession of weapons is not allowed;" and (2) "[tenant] will cooperate with periodic Health and Safety inspections." *Id*., ¶ 6, Exh. 1.

In 2013, Witmer began to refuse to allow GLMH to conduct the required health and safety inspections.  Witmer was also seen carrying a gun (in his holster) in his apartment. Both of these actions were violations of his agreement with GLMH.  GLMH terminated Witmer from the Program when he continued to refuse to comply with the Program rules. *Id*., ¶ 7. MDC then instituted eviction proceedings in Pierce County Superior Court. Dkt. Dkt. 35, Declaration of Holly E. Lynch, Exh. 1.  The Pierce County Superior Court approved the eviction and issued an eviction order on May 28, 2013.  *Id*.

### III. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     GLMH's Motion**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under section 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

In this case, GLMH contends that it is not subject to suit under § 1983 because it is a private actor not acting under color of law. An entity is subject to suit under § 1983 when the alleged deprivation of rights is "fairly attributable" to the government. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). When addressing whether a private party acted under color of law, the court must start with the presumption that private conduct does not constitute governmental action. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."); *Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991) ("[P]rivate parties are not generally acting under color of state law."). "In order for private conduct to constitute governmental action, 'something more' must be present." *Sutton*, 192 F.3d at 835 (9th Cir. 1999). Courts have used four different factors or tests to identify what constitutes "something more": (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental

nexus. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982); *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir.), *cert. denied*, 522 U.S. 996 (1997); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995); *Gorenc v. Salt River Project Agric. Improvement and Power Dist.*, 869 F.2d 503, 506 (9th Cir. 1989).

In *Reiner v. Mental Health Kokua*, No. CV 10-00340 DAE LEK, 2011 WL 322535 (D. Haw. Jan. 31, 2011), the district court considered all four factors when determining whether a defendant similar to GLMH was a state actor for § 1983 purposes. The defendant was a "501(c) non-profit corporation, providing residential housing and rehabilitation to adults with mental disabilities" and "receive[d] federal funding from the United States Department of Housing and Urban Development . . . ." *Id*. at *1. The court concluded that receiving federal funding and abiding by some federal regulations was insufficient to turn the private entity into a government actor. *Id*. at *8.

Similarly, in *Kabbani v. Council House, Inc.*, 406 F. Supp. 2d 1189, 1191 (W.D. Wash. 2005), this Court considered whether a private landlord was a government actor because the landlord participated in a federal low-income housing program. On a motion for preliminary relief, the Court concluded that the plaintiff was unlikely to succeed in showing that the private entity was a government actor mainly because plaintiff failed to submit any evidence that any government entity or official was responsible for promulgation or enforcement of the "House Rules" that led to plaintiff's eviction. *Id*. at 1194–95. Instead, the "House Rules" were enforced by the complex manager, "who has the 'ultimate authority' to make decisions regarding tenant evictions." *Id*. at 1194.

GLMH contends that it is not a government actor under *Reiner*, *Kabbani*, and numerous other cases. The Court agrees. While GLMH receives federal funding and must follow certain federal regulations, courts have consistently held that such involvement by the federal government does not turn a private entity into a government actor. Moreover, GLMH was not Witmer's landlord and was not involved in the eviction proceeding, which weighs against a finding of government action. Therefore, the Court grants GLMH's motion for summary judgment because Witmer has failed to show that GLMH is subject to suit under § 1983.

Finally, Witmer argues that his landlord violated the state landlord-tenant laws. Dkt. 35 at 17–19. Witmer did not include these claims in his complaint, and such claims are beyond the jurisdiction of this Court in the absence of a federal claim. Therefore, the Court declines to address these issues.

## IV. ORDER

Therefore, it is hereby **ORDERED** that GLMH's motion for summary judgment (Dkt. 29) is **GRANTED**, the Clerk shall enter judgment in favor of GLMH, and Witmer's *in forma pauperis* status is revoked for the purposes of appeal.

Dated this 23rd day of March, 2016.

BENJAMIN H. SETTLE
United States District Judge